[Cite as *State v. Tirado*, 2015-Ohio-5512.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 15-CA-56 |
| | : | |
| ANTHONY S. TIRADO | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING: Appeal from the Licking County Court of Common Pleas, Case No. 14 CR 00867



JUDGMENT: AFFIRMED




DATE OF JUDGMENT ENTRY: December 30. 2015




APPEARANCES:

For Plaintiff-Appellant:

KENNETH W. OSWALT
LICKING CO. PROSECUTOR
BRYAN R. MOORE
20 S. Second St., Fourth Floor
Newark, OH 43055

For Defendant-Appellee:

DARRIN C. LEIST
513 E. Rich St., Ste. 201
Columbus, OH 43215

*Delaney, J.*

{¶1}   Appellant state of Ohio appeals from the July 14, 2015 Judgment Entry of the Licking County Court of Common Pleas granting the motion to suppress of appellee Anthony S. Tirado.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the record of the hearing upon appellee's motion to suppress.

{¶3}   Officer Jarrod Conley is a member of the Newark Police Department "NIU," a unit targeting drug activity.  On September 23, 2014, Conley learned from a confidential informant (C.I.) that people were allegedly dealing drugs in a residence directly across the street from the Newark Police Department.[1]  Conley instructed a police dispatcher, Wes Luce, to use video cameras mounted on the front of the police department to zoom in on the residence and to notify Conley if anyone arrived.  Shortly thereafter, Luce told Conley a man later identified as appellee had just gone inside.  Conley told Luce to let him know when appellee left because Conley would "try and encounter him."

{¶4}   Five or ten minutes later, appellee left and proceeded south on Fourth Street toward Conley.  Luce advised appellee's bicycle did not have a light and he was riding on the wrong side of the road, which Conley also observed.  Conley testified appellee was in violation for having no light on his bicycle in violation of Newark Ordinance 47.05 although he was not cited for the violation.  Conley also testified he

---

[1] During the suppression hearing, Conley identified the C.I. and said the C.I. had called him around 6:00 p.m. that evening and told him to watch the residence in question because heroin and methamphetamine were sold there.

had reasonable suspicion to stop appellee because a reliable informant told him about drug dealing at the residence and appellee was inside the residence for a very brief time, which to Conley is indicative of drug activity.

{¶5}   Conley stopped appellant and asked whether he knew he was required to have a light on his bicycle.  He asked where appellee was coming from and where he was going; appellee responded he was on his way from work at McDonald's downtown to his mother's house.  Conley pointed out the mother's address was "not in the area" so what was appellant doing in the neighborhood, to which appellee responded "Nothing."  Conley asked appellee if he stopped anywhere on the way and appellee said no.

{¶6}   Conley also observed appellee had a condition he referred to as "meth mouth," meaning his teeth were "horrible."

{¶7}   Conley testified he asked appellee if he could pat him down for weapons and appellee responded "Yes."  During the pat-down, Conley felt what he recognized as a cigarette pack and asked appellee if he could look inside it, to which appellee also said "Yes."  Conley said appellee withdrew the cigarette pack from his own pocket and allowed him to look inside.

{¶8}   Inside the cigarette pack, Conley observed what he immediately identified as meth.  Conley Mirandized appellee and testified appellee never admitted to buying meth at the residence and said he got it from a friend at work.  In lieu of immediate arrest appellee agreed to work as a C.I. but it "never worked out."

{¶9}   A portion of Conley's interaction with appellee was captured on the cruiser videotape but the body microphone wasn't working throughout the entire conversation.

The video was played at the suppression hearing but shows only Conley coming upon appellee in the roadway. The ensuing conversation is unintelligible on the tape.

{¶10} Conley did not cite appellee for the bicycle violation and, because he agreed to work for police as a C.I., allowed appellee to leave on the bicycle.

{¶11} On cross examination, Conley acknowledged the original C.I. did not personally buy drugs at the residence and the only step Conley took to verify the C.I.'s information was to have the dispatcher watch the house on the police department video monitors.

{¶12} Appellee called Dispatcher Luce as a witness at the suppression hearing. Luce testified around 11:20 p.m. Conley asked him to watch a house directly across from the police department using the in-house video cameras. The camera had to be re-positioned to view the house. Conley also instructed Luce to let him know when anyone arrived at the house and when they left. Luce observed a man ride up on a white bicycle, enter the house and remain for less than ten minutes, and leave. He acknowledged he did not recognize appellee as the bicycle rider and did not see any drug sale transaction take place.

{¶13} Appellee also testified on his own behalf, stating that he worked his shift at McDonald's until shortly after 11:00 p.m. when he left on his bicycle. He was stopped by Officer Conley in an alley; Conley advised him it was illegal to ride his bicycle without a light or reflectors. Appellee said Conley removed a pocket knife he had "on the side of his pant leg" and told appellee he was going to search him for weapons. Appellee testified Conley removed the cigarette pack from his left pocket and that the officer

never asked for permission to pat him down or to remove the cigarette pack. Appellee said Conley also searched the rest of his belongings without consent.

{¶14} Appellee was charged by indictment with one count of aggravated drug possession (methamphetamine) pursuant to R.C. 2925.11(A)(C)(1)(a), a felony of the fifth degree. Appellee entered a plea of not guilty and moved to suppress statements made to and evidence seized by Conley. Appellee denied he consented to the pat down and search that led to the cigarette pack.

{¶15} The evidentiary hearing was held on May 20, 2015. On July 14, 2015, the trial court sustained appellee's motion to suppress, finding appellant did not meet its burden to establish consent to search was freely and voluntarily given.

{¶16} Appellant now appeals from the Judgment Entry of the trial court dated July 14, 2015 granting appellee's motion to suppress. Pursuant to Crim.R.12(K), appellant certifies the appeal is not taken for purpose of delay and the ruling of the trial court has rendered appellant's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

{¶17} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶18} "A COURT COMMITS FUNDAMENTAL ERROR IN DECIDING A MOTION TO SUPPRESS BY PLACING UPON THE PROSECUTION THE DUTY TO CORROBORATE THE TESTIMONY OF A LAW ENFORCEMENT OFFICER WITH 'OTHER EVIDENCE' ONCE IT HAS ALREADY 'CREDITED' THAT OFFICER'S VERSION OF EVENTS AND THAT VERSION SUPPORTS THE VOLUNTARY NATURE OF A CONSENT TO SEARCH."

**ANALYSIS**

{¶19} Appellant argues the trial court erred in granting appellee's motion to suppress. We disagree.

{¶20} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶21} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams*,

supra.    Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress.   When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶22} When a search occurs without a warrant, appellant has the burden to show that the search comes within one of the judicially recognized exceptions to the warrant requirement. *State v. Akron Airport Post No. 8975*, 19 Ohio St.3d 49, 51, 482 N.E.2d 606 (1985). One exception allows for a brief investigatory stop and search where specific facts give rise to a reasonable suspicion of criminal activity. Id.; *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Another exception exists when searches are conducted with consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Posey*, 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988).

{¶23} On appeal, the issue is whether appellee consented to the search of his person yielding the cigarette pack. When a person is lawfully detained by police and consents to a search, the state must show by clear and convincing evidence that the consent was freely and voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323–24, 75 L.Ed.2d 229 (1983); *State v. Pierce*, 125 Ohio App.3d 592, 598, 709 N.E.2d 203 (1998). In determining whether consent was voluntary, a court must consider the totality of the circumstances. *Schneckloth* at 222; *State v. Childress*, 4 Ohio St.3d 217, 448 N.E.2d 155 (1983), paragraph one of the syllabus. At suppression appellee argued there was no suspicion that would allow for a further search, but the

*Terry* requirement of reasonable suspicion is avoided entirely when a person voluntarily consents to a search. See, *State v. Drumm*, 2015-Ohio-2176, 36 N.E.3d 769, ¶ 11 (2nd Dist.).

{¶24} Appellant argues the trial court erred in requiring it to present "other evidence" to corroborate the testimony of Officer Conley to meet its burden of proof in establishing consent to search. We find, however, the trial court did not impose any additional evidentiary requirement upon appellant; instead, the trial court merely evaluated the credibility of the evidence and witnesses.

{¶25} It is axiomatic that in a suppression hearing, it is the function of the trial court as finder of fact to determine the credibility of witnesses and the relative weight of the testimony. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). When there is sufficient probative evidence from which the trier of fact determined the factual issues, we as an appellate court may not substitute our judgment on such a factual determination. *State v. Jewell*, 5th Dist. Delaware No. 01CAA03006, 2002-Ohio-226, 2002 WL 86855 at *2, citing *Fanning*, supra. Both parties accurately cite *Schneckloth v. Bustamante*, supra, 412 U.S. 218, for the proposition that whether consent is voluntary or the product of duress is determined from the totality of the circumstances. That case examined the trial court's role in measuring when "consent" to a search is actually the result of coercion: "In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents." *Schneckloth v. Bustamonte*, 412 U.S. 218, 229, 93 S.Ct. 2041, 2049, 36 L.Ed.2d 854 (1973).

{¶26} There are no allegations of coercion in the instant case. The trial court was not evaluating the circumstances to determine if at any point the officer's questions became coercive to the extent that appellee's consent could no longer be deemed "voluntary." Instead, appellee took the stand to testify he never consented to the search at all, directly contradicting the testimony of Conley. Unfortunately, the faulty body mic or defective audio meant the conversation was not recorded, so the videotape does not corroborate either witness.

{¶27} The issue at suppression was thus whether appellant met its evidentiary burden of proof on appellee's consent. The state's burden of proof on a motion to suppress evidence is by preponderance of the evidence. *State v. Williams*, 5th Dist. Knox No. 01 CA 24, 2002-Ohio-4267, ¶ 13, citing *Athens v. Wolf*, 38 Ohio St.2d 237, 241, 313 N.E.2d 405 (1974). "The preponderance of the evidence is defined as the greater weight of the evidence, evidence that is more probable, more persuasive and of greater probative value." Id., citing *Beerman v. City of Kettering*, 14 Ohio Misc. 149, 159, 237 N.E.2d 644 (1956).

{¶28} The trial court determined the preponderance of the evidence did not support appellee's consent to search, although the court parsed its language in saying so. The trial court's decision upon the suppression motion amounts to a credibility call upon the weight of appellant's evidence. The trial court did not hold appellant to any higher evidentiary standard. Although appellant frames the argument as a legal issue, we may not substitute our judgment for that of the trial court upon such a purely factual determination.

{¶29} Appellant's sole assignment of error is thus overruled.

## CONCLUSION

{¶30} The assignment of error is overruled and the judgment of the Licking County Court of Common Pleas is affirmed.

By:  Delaney, J. and

Farmer, P.J.

Wise, J., concur.